IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Nancy Guerrero, )
                     Plaintiff, )
)
    vs. )
)
Nancy A. Berryhill, Deputy Commissioner for )
Operations, Social Security Administration, )
)    No. 2:17-cv-4258-HRH
                     Defendant. )

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff Nancy Guerrero has timely filed her opening brief,[1] to which defendant Nancy A. Berryhill has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

On January 6, 2014, plaintiff filed an application for disability benefits under Title II of the Social Security Act, alleging that she became disabled on December 20, 2013. Plaintiff alleges that she is disabled due to arthritis, fibromyalgia, thyroid cancer, dislocated back disc work injury, carpal tunnel, leg nerve damage, and myopia. Plaintiff's application was denied initially and on reconsideration. After a hearing on June 15, 2016, an administrative law judge

---

[1]Docket No. 14.

[2]Docket No. 15.

(ALJ) denied plaintiff's claim. On September 18, 2017, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's July 15, 2016 decision the final decision of the Commissioner. On November 20, 2017, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

General Background

Plaintiff was born on February 2, 1962. She was 54 years old at the time of the administrative hearing. Plaintiff is married and lives with her husband and teen-aged son. Plaintiff does not have a high school education. Plaintiff's first language is Spanish and she does not speak English fluently. Plaintiff's past relevant work is as a hand packager in a warehouse.

The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2017."[3] The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 22.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since December 20, 2013, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff had

> the following medically determinable impairments: history of thyroid cancer, now stable; hypothyroidism; hyperlipidemia; vitamin D insufficiency; degenerative disc disease of the lumbar spine, including stenosis; fibromyalgia; chronic pain syndrome; carpal tunnel syndrome; bilateral upper extremity paresthesia; Bouchard and Heberdon's nodules; headaches and dizziness secondary to vertigo; hypertension; unstable angina, trace mitral regurgitation, and atherosclerotic heart disease of native coronary artery without angina pectoris; Sicca syndrome; and fatty liver. . . .[6]

But, the ALJ found that plaintiff did "not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic

---

[4](...continued)
impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 22.

[6]Admin. Rec. at 22.

work-related activities for 12 consecutive months[.]"[7] Thus, the ALJ found that plaintiff did "not have a severe impairment or combination of impairments. . . ."[8]

The ALJ explained that this finding was "supported by the repeatedly mild radiographic findings, the mostly normal findings on physical examination, and the claimant's demonstrated response to conservative treatment modalities."[9] It was for these reasons that the ALJ also found plaintiff's statements about the severity of her impairments less than credible.

The ALJ considered the medical opinions in the record. The ALJ gave little weight[10] to the opinions of Dr. Scott,[11] Dr. Wavak,[12] and Dr. Griffith.[13]

---

[7]Admin. Rec. at 23.

[8]Admin. Rec. at 23.

[9]Admin. Rec. at 30.

[10]Admin. Rec. at 29.

[11]Dr. Scott treated plaintiff's back pain in connection with a worker's comp claim. On October 3, 2011, Dr. Scott opined that for the period of October 3, 2011 until November 4, 2011, plaintiff was on modified work status, and that she could not do repetitive bending/twisting and could not lift/push/pull more than 10 pounds. Admin. Rec. at 292. On December 23, 2011, Dr. Scott opined that plaintiff could return to full duty work with no restrictions. Admin. Rec. at 155.

[12]On April 29, 2014, Erika Wavak, M.D., a non-examining source, opined that plaintiff could occasionally lift/carry 25 pounds; frequently lift/carry 10 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to pushing and pulling; could frequently climb ramps/stairs and balance; could occasionally climb ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to hazards. Admin. Rec. at 63-64.

[13]On December 22, 2014, Ernest Griffith, M.D., a non-examining source, opined that there was not sufficient evidence from which to assess plaintiff's RFC and recommended that a consultative exam be obtained. Admin. Rec. at 74.

The ALJ concluded that plaintiff was "not disabled under sections 216(i) and 223(d) of the Social Security Act."[14]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

---

[14]Admin. Rec. at 30.

Discussion

Plaintiff argues that the ALJ erred at step two by finding that none of her impairments were severe. "An impairment or combination of impairments may be found 'not severe <u>only if</u> the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)). "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" Id. at 687 (quoting S.S.R. No. 85–28 (1985)). "Step two, then, is a <u>de minimis</u> screening device [used] to dispose of groundless claims and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." Id. (internal citations omitted). "Thus, applying [the] normal standard of review to the requirements of step two, [the court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [plaintiff] did not have a medically severe impairment or combination of impairments." Id.

Plaintiff argues that there was not substantial evidence supporting the ALJ's finding that her impairments were not severe. First, plaintiff argues that the ALJ improperly discounted her statements about the severity of her impairments.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014

(9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen, 80 F.3d at 1282). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2011) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

The ALJ found plaintiff's pain and symptom statements less than credible because they were not supported by the medical evidence and because her impairments had responded to conservative treatment. Plaintiff argues that these were not clear and convincing reasons.

As for the first reason, that plaintiff's pain and symptom statements were not supported by the medical evidence, plaintiff argues that the ALJ did not explain what particular medical findings were inconsistent with plaintiff's statements. Rather, plaintiff contends, the ALJ "drift[ed] into a discussion of the medical evidence" without providing any "reasons for the credibility determination." Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). Plaintiff argues that this is not sufficient because an ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain" and other symptoms. Bunnell v. Sullivan, 947 F.2d 341, 345–46 (9th Cir. 1991) (citation omitted). As the Ninth Circuit has made clear,

> an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that [the court's] review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, [the court] require[s] the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015).

Defendant argues that there is sufficient evidence to support the ALJ's finding that plaintiff's pain and symptom statements were not supported by the medical evidence.

Defendant cites to plaintiff's MRIs in 2013 and 2015 which showed only mild degenerative changes[15] and to plaintiff's physical examinations which showed that she had full range of motion, a normal gait and posture, and normal reflexes and muscle strength.[16] Defendant also cites to plaintiff's EMG testing, EKG, and treadmill stress testing, all of which were mostly normal.[17]

The problem with defendant's argument is that the ALJ did not link this medical evidence to her credibility findings. Instead, the ALJ simply recited the medical evidence, which is not sufficient. The first reason given by the ALJ for rejecting plaintiff's pain and symptom statements was not clear and convincing.

As for the second reason, conservative treatment, "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.'" Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007)). But, plaintiff argues that it was error for the ALJ to consider her treatment conservative because her pain was being managed by Tramadol, which is a narcotic pain medication.

"The Ninth Circuit and its district courts have generally viewed the use of narcotic pain medication as non-conservative treatment." Martinez v. Colvin, Case No. ED CV 14–846–SP, 2015 WL 4270021, at *6 (C.D. Cal. July 13, 2015). And, other evidence in the record suggests

---

[15]Admin. Rec. at 308 and 431.

[16]Admin. Rec. at 567, 622-623.

[17]Admin. Rec. at 294-295, 362-364, 443, 514-515.

that plaintiff's treatment has not been conservative, such as the fact that plaintiff failed trials of several other medications, including Lyrica, Neurontin, Robaxin, Skelaxin, and Cymbalta.[18]

On the other hand, some courts have held that the use of narcotic pain medication cannot be considered conservative treatment. See Sutton v. Berryhill, Case No. 1:16–cv–01580–SKO, 2018 WL 746406, at *8 (E.D. Cal. Feb. 7, 2018) (observing that "[s]everal courts in this circuit . . . have found that the fact that [p]laintiff has been prescribed narcotic medication does not negate the reasonableness of the ALJ's finding that [p]laintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods"). And, there is other evidence that suggests that plaintiff's treatment has been conservative, such evidence that her back and leg pain was treated with physical therapy and anti-inflammatory medications,[19] that Dr. Tessor recommended hot packs, analgesic balm, and range of motion exercises,[20] and that Dr. Herrera Tan prescribed a pain-relief cream.[21]

When all the evidence is considered, the conservative treatment reason was not a clear and convincing reason for finding plaintiff's pain and symptom statements less than credible. The fact that narcotic medication, rather than non-narcotic medication, was necessary to treat plaintiff's pain supports plaintiff's credibility as to the severity of her pain, more than it detracts from her credibility.

---

[18]Admin. Rec. at 310.

[19]Admin. Rec. at 305.

[20]Admin. Rec. at 623-624.

[21]Admin. Rec. at 467.

Plaintiff next takes issue with the ALJ's reliance[22] on the fact that some of the treatment notes indicated that plaintiff was "stable" on her medication.[23] Plaintiff argues "that a condition can be stable but disabling." Petty v. Astrue, 550 F. Supp. 2d 1089, 1099 (D. Ariz. 2008). In addition, plaintiff contends that the fact she may have been "responding to treatment" is somewhat irrelevant as "[n]o physician opined that any improvement would allow [her] to return to work." Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989). Plaintiff also argues that the "fact that [she] was 'stable' does not mean that [s]he was not still experiencing great pain" because "doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity." Englehardt v. Astrue, Case No. 2:10-cv-2512-HRH, 2012 WL 12878758, at *7 (D. Ariz. March 21, 2012) (citation omitted).

Defendant, however, argues that the ALJ's references to plaintiff's conditions being "stable" must be considered in combination with the ALJ's finding that plaintiff's impairments were being managed conservatively. Defendant argues that when considered together, these show that the ALJ was not misconstruing "stable" to mean "unimpaired" but rather was indicating that conservative measures were effective at keeping plaintiff's impairments under control.

---

[22]Admin. Rec. at 27.

[23]Admin. Rec. at 331, 334, 352, 361, 372, 486, 623.

But, even if the measures employed were keeping plaintiff's pain and symptoms under control such that some of her conditions could be considered "stable," this has little to do with whether plaintiff's impairments were severe or not. A condition can be stable and still be severe. The fact that some of plaintiff's conditions were stable does not support the ALJ's step-two finding that plaintiff did not have any severe impairments.

Plaintiff next argues that the ALJ erred in finding her impairments non-severe because the ALJ relied on her own view of the medical evidence. The ALJ rejected the only medical opinions in the record which evaluated plaintiff's capacity to perform work. This suggests that the ALJ relied on her own view of the medical evidence and that she was not merely "interpret[ing] the medical evidence," as defendant contends. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). It is improper for the ALJ to "substitute[] her judgment for" those of the medical providers, which is what the ALJ did here. Trevizo v. Berryhill, 871 F.3d 664, 683 (9th Cir. 2017).

Finally, plaintiff argues that the ALJ erred at step two because her rationale was internally contradictory as to plaintiff's fibromyalgia. The ALJ first found that plaintiff's fibromyalgia was a medically determinable impairment.[24] But later in her decision, the ALJ found "fibromyalgia to be a non-medically determined impairment. . . ."[25] An impairment is either medically determinable or it is not; it cannot be both.

---

[24]Admin. Rec. at 22.

[25]Admin. Rec. at 26.

But this error was harmless because it was "inconsequential to the ultimate nondisability determination." Stout, 454 F.3d at 1055. The ALJ found that "even if the . . . the claimant's fibromyalgia" were a medically determinable impairment, "the record indicates that it is not severe."[26] In other words, the ALJ's ultimate decision as to disability would have been the same regardless of whether the ALJ considered fibromyalgia a medically determinable impairment or not.

While the last error may have been harmless, the ALJ's other errors were not harmless. Had the ALJ properly considered plaintiff's credibility and not substituted her judgment for those of the medical providers, it is quite likely that she would have found that plaintiff had some severe impairments. Had the ALJ found that plaintiff had some severe impairments, the ALJ would have had to continue with the sequential analysis, which could have resulted in a different disability decision.

Because the ALJ erred, the court must consider whether to remand this matter for further proceedings or for an award of benefits. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id.

---

[26] Admin. Rec. at 26.

(quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

Here, a remand for further proceedings is appropriate so that the ALJ can properly access whether plaintiff has any severe impairments and then proceed with the sequential analysis if necessary.

## Conclusion

Defendant's final decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 23rd day of October, 2018.

/s/ H. Russel Holland
United States District Judge